```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                       TAMPA DIVISION
```

TARPON TRANSPORTATION
SERVICES, INC.,

    Plaintiff,
v.                                  Case No. 8:20-cv-2656-VMC-CPT

TOTAL QUALITY LOGISTICS, LLC,

    Defendant.
_____/

**ORDER**

This matter is before the Court on consideration of Defendant Total Quality Logistics, LLC's Motion to Dismiss Plaintiff's Complaint (Doc. # 33), filed on June 24, 2021. Plaintiff Tarpon Transportation Services, Inc. responded on July 15, 2021. (Doc. # 43). For the reasons that follow, the Motion is granted in part and denied in part.

**I.   Background**

According to the complaint, Total is "one of the largest freight brokerage firms in North America" and "has a well-established record of seeking to ruthlessly enforce its employment and non-compete agreements." (Doc. # 1-3 at 2). David Minnis worked for Total "for less than a year" and "was terminated on July 22, 2016." (Id.). As part of his employment with Total, Minnis entered into a Non-Compete Agreement,

1

which prohibited Minnis from competing with Total for one year following the termination of his employment. (Id. at 4). The complaint alleges that, because Minnis was terminated by Total on July 22, 2016, "the one year period under the Non-Compete Agreement ended on July 22, 2017." (Id.).

Some time after leaving Total, Minnis founded Doc M. LLC. (Id. at 2). "Some twenty-one months after Minnis left [Total], on or about March 12, 2018, Tarpon engaged Doc M. LLC as an independent contractor." (Id. at 4). Total subsequently initiated a state court action in Ohio against Minnis. (Id. at 5). Additionally, Total "brought an action against Tarpon in the Court of Common Pleas for Clermont County, Ohio." (Id.). After being removed to the Southern District of Ohio, the case against Tarpon was dismissed for lack of personal jurisdiction in September 2019. (Id.). Meanwhile, the Ohio state court action against Minnis is still pending and Total "has purportedly filed [] a motion for order to show cause to attempt to enforce [a default judgment entered against Minnis] against Tarpon as well." (Id.).

After learning of the motion for order to show cause, Tarpon initiated this lawsuit in Florida state court on October 7, 2020, asserting claims for declaratory relief (Count I), tortious interference with a business relationship

2

(Count II), and tortious interference with employment relationships (Count III). (Doc. # 1-3). Total filed its answer in state court. (Doc. # 1-4). Total removed the case to this Court on the basis of diversity jurisdiction on November 12, 2020. (Doc. # 1). The case then proceeded through discovery.

Now, Total seeks to dismiss all claims, arguing that Tarpon lacks standing. (Doc. # 33). Tarpon has responded (Doc. # 43), and the Motion is now ripe for review.

## II.   Legal Standard

### A.   Rule 12(b)(1)

Motions filed under Federal Rule of Civil Procedure 12(b)(1) question this Court's jurisdiction over the subject matter of the case. Motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). Where the jurisdictional attack is based on the face of the pleadings, the Court merely looks to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the plaintiff's complaint are taken as true for purposes of the motion. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

In factual attacks, on the other hand, the Court delves into the arguments asserted by the parties and the credibility of the evidence presented. Garcia v. Copenhaver, Bell, & Assocs., 104 F.3d 1256, 1260-61 (11th Cir. 1997). As stated in Morrison, "Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits." 323 F.3d at 925. In deciding a motion to dismiss filed under Rule 12(b)(1), this Court is not required to assume that the allegations in the Complaint are true. Rosenkrantz v. Markopoulos, 254 F. Supp. 2d 1250, 1251 (M.D. Fla. 2003); see also Goodman v. Sipos, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001)(factually-based attacks on subject matter jurisdiction go beyond the pleadings and permit testimony and affidavits to be considered).

Rule 12(h)(3) states: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "Thus, the Court may consider motions to dismiss for lack of subject matter jurisdiction at any time." Roberts v. Swearingen, 358 F. Supp. 3d 1341, 1346 (M.D. Fla. 2019).

### B. Standing

"A plaintiff's standing to bring and maintain her lawsuit is a fundamental component of a federal court's subject matter jurisdiction." Baez v. LTD Fin. Servs., L.P., No. 6:15-cv-1043-PGB-DCI, 2016 WL 3189133, at *2 (M.D. Fla. June 8, 2016)(citing Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013)). The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016).

To establish standing, "[t]he plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id.

The injury-in-fact requirement is the most important element. Id. An injury-in-fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). The injury must be "particularized," meaning it "must affect the plaintiff in a personal and individual way." Id. (quoting Lujan, 504 U.S. at 560 n.1). Additionally, the

5

injury must be "concrete," meaning "it must actually exist." Id.

### III. Analysis

#### A. Count I

Count I seeks a declaration (1) "that the Restrictive Covenant" — that is, the non-compete agreement between Total and Minnis — "terminated prior to Tarpon entering an independent contractor relationship with Doc M. LLC," (2) "that Minnis and Doc M. LLC did not violate the Restrictive Covenant by engaging in an independent contractor relationship with Tarpon," or (3) alternatively, "the Restrictive Covenant is unenforceable." (Doc. # 1-3 at 6).

Total argues that Tarpon lacks standing because "[i]n essence, there is no injury in the first place because [Tarpon] is neither a party to nor a third-party beneficiary of the Agreement it seeks to challenge." (Doc. # 33 at 3). The Court agrees. "An entity who is not a party to or an intended beneficiary of a contract cannot sue to enforce or interpret a contract." Sun Commodities, Inc. v. C.H. Robinson Worldwide, Inc., No. 11-62738-CIV, 2012 WL 602616, at *3 (S.D. Fla. Feb. 23, 2012). "Parties who lack standing to enforce an agreement also lack standing to seek a declaration of rights under the contract." Eaton Vance Mgmt. v. ForstmannLeff

6

Assocs., LLC, No. 06 CIV.1510 WHP, 2006 WL 2331009, at *6 (S.D.N.Y. Aug. 11, 2006). Thus, "[c]ourts routinely hold that a plaintiff that has hired (or wishes to hire) the employees of a competitor does not have standing to sue that company to seek nullification of a non-compete agreement between the competitor and its employees." Bowhead Info. Tech. Servs., LLC. v. Catapult Tech. Ltd., 377 F. Supp. 2d 166, 172 (D.D.C. 2005)(dismissing new employer's declaratory judgment claim against former employer for lack of standing).

The declaration Tarpon seeks here is focused on the interpretation of an agreement to which it is not a party and, in fact, seeks a holding that that agreement is legally unenforceable. Likewise, the requested declaration would require this Court to decide whether Minnis — who is not a party to this action — violated his agreement with Total. Tarpon does not have standing to directly challenge the agreement between Minnis and Total in this way. See, e.g., Sun Commodities, Inc., 2012 WL 602616, at *3 (dismissing for lack of standing a claim seeking a declaration that a non-compete agreement between plaintiff's new employee and the former employer was "unenforceable" or, alternatively, a declaration as to whom the employee could sell produce under the non-compete agreement); Defiance Hosp. v. Fauster-

7

Cameron, Inc., 344 F. Supp. 2d 1097, 1118 (N.D. Ohio 2004)(holding that plaintiffs "lack standing to sue to enforce or void the employment contract" because they "are neither parties to the employment contracts between the [defendant] Clinic employees and the Clinic, nor are they third-party beneficiaries"); Premier Pyrotechnics, Inc. v. Zambelli Fireworks Mfg. Co., No. 05-3112-CV-SFJG, 2005 WL 1307682, at *2 (W.D. Mo. May 31, 2005)("Plaintiff's protestations that this case is not about interpretation of the employment contract between Karpinski and defendant are unavailing; defendant correctly points out that the relief requested is the interpretation of a contract to which plaintiff is not a party. Plaintiff does not have standing to pursue this declaratory judgment action.").

Therefore, the Court lacks jurisdiction over Count I. Total is incorrect, however, in arguing for dismissal of this claim. Because this case was removed from state court, the proper remedy is remand. See McGee v. Solic. Gen. of Richmond Cnty., 727 F.3d 1322, 1326 (11th Cir. 2013)("Typically, where standing is lacking, a court must dismiss the plaintiff's claim without prejudice. This is not so, however, in the removal context. As 28 U.S.C. § 1447(c) explains, '[i]f at any time before final judgment it appears that the district

8

court lacks subject matter jurisdiction, the case shall be remanded.'").

Additionally, Tarpon's lack of standing for Count I does not require remand of the entire case — the Court need only remand the claims over which it lacks jurisdiction. See Buscema v. Wal-Mart Stores E. LP, 485 F. Supp. 3d 1319, 1330 (D.N.M. 2020)("At least two circuits have accordingly recognized that a partial remand under [Section] 1447(c) is an appropriate remedy where a district court lacks jurisdiction over some, but not all, of the claims removed to it under [Section] 1441(a)."); Shaw v. Marriott Int'l, Inc., 605 F.3d 1039, 1044 (D.C. Cir. 2010)("Because '[a]n ordinary reading of the language indicates that [Section 1447(c)] refers to an instance in which a federal court "lacks subject matter jurisdiction" over a "case," and not simply over one claim within a case,' [Section] 1447(c) does not require remand of the entire case in these circumstances." (quoting Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 392 (1998))).

**B.   Counts II and III**

In Count II, Tarpon asserts a claim for tortious interference with a business relationship. (Doc. # 1-3 at 6-7). The complaint alleges that Total "intentionally and unjustifiably interfered with Tarpon's contractual

relationship with Doc M. LLC, by demanding that Tarpon terminate its relationship with Doc M. LLC, among other things." (Id. at 7). Tarpon seeks compensatory damages and a permanent injunction "enjoining and restraining [Total] from taking any actions to enforce the Restrictive Covenant against Minnis, Doc M. LLC, and/or Tarpon." (Id.).

Count III is a claim for tortious interference with employment relationships, alleging that Total "unjustifiably and intentionally interfered with Tarpon's relationship with Doc M. LLC" by "attempting to enforce [the default judgment against Minnis in the Ohio state court action] against Tarpon, unless Tarpon is willing to terminate its relationship with Doc M. LLC." (Id. at 8). Tarpon seeks compensatory damages for this claim. (Id.).

Total seeks dismissal of both Counts II and III. (Doc. # 33 at 4-5). Regarding Count II, Total argues "Tarpon lacks standing to bring this claim as it is not a party to the Agreement." (Id. at 4). Total also argues Count III should be dismissed because "whether the Agreement is or isn't enforceable as to Minnis will be decided by the [] Ohio court" and "an analysis of this claim by the Court will require interpretation of the Agreement for which Plaintiff is not a party." (Id.).

10

The Court disagrees with Total. The fact that Tarpon is not a party to the non-compete agreement between Total and Minnis does not prevent Tarpon from pursuing tortious interference claims against Total. This is because Tarpon bases its tortious interference claims on Total's interfering with Tarpon's business and employment relationship with Doc M. LLC — not Total's agreement with Minnis. As Tarpon has alleged that it has a business and employment relationship with Doc M. LLC with which Total has interfered, Tarpon has sufficiently established an injury-in-fact that supports standing for the tortious interference claims.

Because Tarpon alleges Total has interfered by taking various actions related to the two cases it initiated against Minnis and Tarpon, there likely will be factual overlap between the Ohio actions and this case. And this action may involve some review of the agreement between Minnis and Total if, for example, Total argues it did not unlawfully interfere with Tarpon's business because its enforcement of the agreement in Ohio state court was reasonable. But that does not mean that Tarpon lacks standing to pursue its tortious interference claims, whether for injunctive relief or damages, because Tarpon's interference claims do not

necessarily involve interpretation or enforcement of the agreement.

Additionally, Total also appears to raise merits arguments regarding Count III — the type of arguments that could have been raised in a Rule 12(b)(6) motion and that do not implicate this Court's subject matter jurisdiction. See (Doc. # 33 at 4-5)(arguing, among other things, that Count III lacks merit because "any alleged interference is clearly justified based on the Agreement"). The Court will not address these Rule 12(b)(6) arguments regarding the sufficiency of the claim alleged by Tarpon because such arguments are untimely.

Unlike a Rule 12(b)(1) motion, a Rule 12(b)(6) motion to dismiss cannot be filed at any time during a case. Indeed, such motion cannot be filed after a defendant has already filed an answer to the complaint, as Total has done here. (Doc. # 1-4); see also Fed. R. Civ. P. 12(b)("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."); Zo Skin Health, Inc. v. Salz, No. 14-CIV-21376, 2014 WL 4185385, at *1 (S.D. Fla. Aug. 22, 2014)("Because Salz filed her answer before filing her Motion, that Motion is untimely, and must be denied. . . . By declining to file her Motion prior to her responsive

pleading, Salz waived her right to seek dismissal pursuant to Rule 12(b)(6).").

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Total Quality Logistics, LLC's Motion to Dismiss Plaintiff's Complaint (Doc. # 33) is **GRANTED** in part and **DENIED** in part.

(2) The Clerk is directed to remand Count I of the complaint to state court.

(3) Counts II and III remain to be litigated in this Court.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 22nd day of July, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

13